PARO ASTOURIAN, ESQ. (SBN: 225488)
paro@astourianlaw.com
JAMES R. GALLIVER, ESQ. (SBN: 246466)
j.galliver@astourianlaw.com
ASTOURIAN & ASSOCIATES, INC.
301 N. Lake Ave., Suite 1000
Pasadena, CA 91101
Tel: (626) 795-7922
Fax: (626) 795-6884

**Attorneys for Plaintiff:**
**Margaretha Natalia Widjaja**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARETHA NATALIA WIDJAJA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., a national banking association; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 2:19-CV-07825-MWF-AFM**<br><br>[*Assigned to the Hon. Michael W. Fitzgerald.*]<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>1. **REFUND OF UNAUTHORIZED CHARGES (15 U.S.C. §§1693, et seq., *Comm. C.* §§1101, et. Seq.);**<br>2. **BREACH OF CONTRACT;**<br>3. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>4. **NEGLIGENCE**<br><br>**[Jury Trial Demanded]** |

Plaintiff MARGARETHA NATALIA WIDJAJA hereby complains against defendants and each of them as follows:

## THE PARTIES

1.     Plaintiff MARGARETHA NATALIA WIDJAJA ("Plaintiff") is now, and at all times mentioned herein was, an individual who maintains bank accounts in the County of Los Angeles, State of California.

THIRD AMENDED COMPLAINT

1

2. Plaintiff is informed and believes and thereupon alleges that defendant JPMORGAN CHASE BANK, N.A. ("CHASE") is, and at all times mentioned herein was, a national banking association, headquartered in Ohio doing business in the County of Los Angeles, State of California.

3. Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as DOES 1 through 10, and therefore sues such defendants by such fictitious names. Plaintiff will ask leave of Court to amend this complaint to allege their true names and capacities and the precise nature of the relationship to defendants when the same have been ascertained. Plaintiff is further informed and believes and thereupon alleges that each of the defendants (named and fictitious) acted as agents or representatives of the other in doing the acts alleged herein and acted within the course of their authority or as ratified or approved by their principals. Plaintiff is informed and believes and thereon alleges that each of such fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

## INTRODUCTION

4. Identity theft, or identity fraud, is a worldwide problem, affecting millions of people every year. A study by Javelin Strategy and Research found that in 2017, there were 16.7 million victims of identity fraud.[1]

5. Identity theft occurs when someone steals a person's personal information to commit fraud.[2] The identity thief may use the victim's information to fraudulently apply for credit, file taxes, or obtain medical services. Indicia of identity theft includes receiving bills for items the victim did not buy; debt collection calls for accounts the victim did not open; and denials of loan applications.

6. The U.S. Department of Justice reports that in 2016, an estimated 26 million

---

[1] "2018 Identity Fraud: Fraud Enters a New Era of Complexity," Javelin Strategy & Research.
[2] *See* https://www.usa.gov/identity-theft

persons (about 10% of all U.S. residents 16 years or older) reported that they have been victims of identity theft.[3] Losses due to identity theft reported in 2016 alone totaled $17.5 billion.  About 20% of identity theft victims discovered the theft by noticing fraudulent charges on their account.  Most victims did not know how the offender obtained their information.

7.    Moreover, identity theft is not merely a crime that affects unsophisticated individuals.  Even large institutions employing cyber-security personnel have been victims of identity fraud. For example, in 2014, a cyberattack on CHASE compromised the accounts of 76 million households and 7 million small businesses.[4]

8.    As alleged herein below, Plaintiff was, and is, the victim of identity fraud, which resulted in at least $500,000 being debited from her checking account.

## ALLEGATIONS RELEVANT TO ALL CLAIMS

9.     Over fifteen years ago, Plaintiff, a foreign national, had several bank accounts at Washington Mutual bank, which were later transferred to defendant CHASE in about 2009 when CHASE acquired Washington Mutual.  Since then, Plaintiff has had several accounts with CHASE, including two checking accounts ending **08 (the "**08 Account") and ending **12 (the "**12 Account") (collectively, the "CHASE Accounts").

10.    Since Plaintiff opened her accounts at Washington Mutual bank, and/or since CHASE acquired Plaintiff's CHASE Accounts from Washington Mutual bank, and to date, Plaintiff has not received agreements and/or documents governing her CHASE Accounts.  Nor did Plaintiff receive any notices from Washington Mutual bank or CHASE explaining how the accounts were transferred from one bank to the other, nor the rules and/or policies governing her CHASE Accounts.

[3] U.S. Dept. of Justice, Bureau of Justice Statistics, "Victims of Identity Theft, 2016." Erika Harrell, Ph.D. Jan. 2019, NCJ 251147.  See https://www.bjs.gov/content/pub/pdf/vit16.pdf.

[4] "JPMorgan Chase Hacking Affects 76 Million Households," New York Times, October 2, 2014. See https://dealbook.nytimes.com/2014/10/02/jpmorgan-discovers-further-cyber-security-issues/?_php=true&_type=blogs&_r=0

11.     Plaintiff has had and still maintains a residence in the County of Los Angeles.  However, Plaintiff is a foreign national, not a resident of Los Angeles or the U.S., and spends a large portion of her time throughout the year traveling overseas, often with no access to her banking records.  In the last several years, and at all times relevant herein, CHASE did not send Plaintiff hard copies or electronic statements of her accounts, including the CHASE Accounts.  Rather, CHASE would merely send Plaintiff general e-mails regarding her accounts and due to frequent and extended overseas travels, Plaintiff did not always have access to the internet and, therefore, was not always able to view her CHASE account statements.

12.     Throughout the years, and while visiting the U.S., Plaintiff had meetings with bank managers at Washington Mutual bank and later at CHASE during which Plaintiff's extensive absences from the U.S. were discussed as well as her occasional visits to the U.S., mostly to California.

13.     Since Plaintiff was maintaining larger balances in her accounts, when Plaintiff's absences were discussed, CHASE managers represented to Plaintiff that:

a.  CHASE had heightened security protection and monitoring for accounts with larger amounts/deposits, such as Plaintiff's CHASE Accounts;

b.  Plaintiff's CHASE Accounts were monitored and protected in a way that made her accounts safe and secure from fraudulent and/or unauthorized account activity;

c.  CHASE would extend its regular periods and deadlines due to Plaintiff's frequent overseas travels and her frequent and extended absence from the U.S.; and

d.  CHASE managers repeatedly represented that Plaintiff's CHASE Accounts were within CHASE's "personal banking" division and, as such, signified that Plaintiff will receive special care and attention above and beyond CHASE's regular account holders.

14.     Plaintiff relied on CHASE's representations and was not cautioned or

THIRD AMENDED COMPLAINT

4

advised by CHASE and its representatives to handle her accounts differently, such as keeping lower balances, or moving the amounts to saving accounts, or transferring amounts from her inactive accounts to avoid the risks of fraudulent transfers.

15.    Plaintiff's main CHASE account which was targeted first by the unauthorized and fraudulent transactions (hereinafter all such unauthorized and fraudulent transactions and charges are collectively referred to as the "Unauthorized Charges" or individually as an "Unauthorized Charge") was the **08 Account. This was essentially a dormant account, without any significant activity for extended periods of time up until the first Unauthorized Charge on about October 31, 2017. Specifically, for a period of at least nine (9) months preceding the first Unauthorized Charge of October 31, 2017, the **08 Account was dormant except for:

      a.   the interest that CHASE was depositing into that **08 Account (which was the only regular monthly activity); and

      b.   a single payment to a CHASE credit card (meaning an internal payment – from the **08 Account to another CHASE account) and one single check deposit by Plaintiff into that **08 Account CHASE (which were the only incidental/irregular transactions).

16.    Therefore, for at least the 9 to 10 months period preceding the start of the Unauthorized Charges Plaintiff was not using the **08 Account in any way or form to make payments outside of CHASE.

17.    CHASE was on notice that the **08 Account was mostly inactive and used by Plaintiff exclusively for transactions with CHASE itself.

18.    Plaintiff's second CHASE account which was targeted by the Unauthorized Charges was the **12 Account. This was an account that was active and had several recurring and regular transactions. Based on the information available to Plaintiff at this stage, the Unauthorized Charges on this **12 Account started in early 2019.  CHASE claims that it has since refunded to Plaintiff the Unauthorized Charges on this **12 Account pursuant to CHASE's internal dispute procedures.

19. In about March 2019, while visiting Los Angeles, Plaintiff reviewed her CHASE Accounts and noticed multiple withdrawals that she did not recognize or authorize. These Unauthorized Charges were made by the following business entities (hereinafter collectively referred to as the "Vendors"): Union Bank, Barclays Bank, Walmart, Old Navy, Bank Of America, Discover, Citibank, First Bank, and Best Buy (said Vendors were named as defendants in prior versions of Plaintiff's Complaints but are now dismissed).

20. Based on Plaintiff's review of her CHASE Accounts records, the first two Unauthorized Charges on her **08 Account were electronic withdrawals originating from Union Bank's PurePoint Financial division on October 31, 2017 in a small amount, less than two dollars. However, those transactions were soon followed by a $29,000 electronic withdrawal from PurePoint on November 2, 2017, and later by additional Unauthorized Charges from other Vendors through approximately early 2019. Following that period, the Unauthorized Charges continued on Plaintiff's **12 Account through about March 2019. The total of the Unauthorized Charges on both CHASE Accounts amounted to over $500,000.

21. These withdrawals were not authorized by Plaintiff, as Plaintiff did not use her **08 Account to make purchases from or have any transactions with the Vendors (or anyone besides CHASE). Rather, the sole purpose of Plaintiff's **08 Account was strictly limited to activities between her and CHASE (interest from CHASE and CHASE credit card payments) none of which were related in any way to the Vendors or even to any other persons.

22. The Unauthorized Charges which started on October 31, 2017 on the **08 Account were obviously noticeable to Chase, because:

    a. They were a radical departure from Plaintiff's normal use of her CHASE Accounts which use was limited to transactions exclusively within CHASE;

    b. They were a sudden and abnormal trend: in the amounts involved, the

THIRD AMENDED COMPLAINT

6

addition of new vendor accounts, the frequency and regularity of payments, all of which were inconsistent with the history of the Account and the way Plaintiff had been using that Account for several months, in fact at least for the last 9 to 10 months.

c. CHASE was making interest payments into the **08 Account on a monthly basis; and

d. One of the very first Unauthorized Charges on about November 9, 2017 was detected by PurePoint as being suspicious and notice was given to CHASE's Fraud Department and the charged amount refunded to CHASE in January 2018.

23.     Pursuant to Plaintiff's discovery and investigation, Plaintiff is informed and believes and thereupon alleges that certain individuals (the "Individual(s)") conspired and coordinated together to fraudulently cause some or all of the Unauthorized Charges to be debited from Plaintiffs CHASE Accounts by misappropriating Plaintiff's identity (identity theft).  Plaintiff is informed and believes that the Individuals whose names were used to make the Unauthorized Charges are either fictitious names and may not be actual persons, or, in case they are actual persons, may themselves be victims of identity fraud and impersonation.

24.     Plaintiff is informed and believes that at least one Individual obtained through illegal means Plaintiff's personal identifying information, which would allow access to her bank account.  Later on that Individual conspired with others to cause the initial $29,000.00 debit from Plaintiff's **08 Account in November 2017.  Once that first Unauthorized Charge was successful, Plaintiff's personal information was used by the same Individual with the help of others to perpetrate the rest of the Unauthorized Charges. The Individuals caused the Unauthorized Charges by debiting Plaintiff's CHASE Accounts directly, or by opening accounts with the Vendors in their own names and/or in Plaintiff's name to debit Plaintiff's Account, using the same information used in the first Unauthorized Charge amounting $29,000 with Purepoint Financial .

THIRD AMENDED COMPLAINT

25.     The same Individuals who obtained access to Plaintiff's Chase account through the PurePoint financial Unauthorized Charge, used that same information to open fraudulent accounts with other Vendors to make substantial transfers of funds from the **08 Account and **12 Account to other Vendor accounts, bank accounts with other banks and even with CHASE itself. In fact, more than $120,000 of the Unauthorized Charges withdrawn fraudulently from Plaintiff's accounts ended up in CHASE bank accounts of some of the Individuals involved in the Unauthorized Charges.

26.     Plaintiff is informed and believes and thereupon alleges that some or all of the information used by the Vendors, Individuals and/or the DOE Defendants to withdraw funds from Plaintiff's CHASE Accounts was obtained,  used and/or provided to third parties by CHASE's failure in its security measures, and/or in the way CHASE grants access to and protects Plaintiff's private information, including the cyberattack on CHASE in 2014, which compromised the accounts of approximately 76 million households and 7 million small businesses (hereafter the "2014 Cyberattack on CHASE").

27.     Plaintiff did not initiate the Unauthorized Charges, did not authorize the transactions, and did not receive any goods or services in exchange for the Unauthorized Charges.

28.     As alleged in Plaintiff's prior pleadings[5],  as well as in paragraphs 11, 19, 21, 23, 24, 27, 29, 30, 32, 56, and 58 of this present Third Amended Complaint, Plaintiff contends and continues to contend that she did not have notice of the Unauthorized Charges due to her inability to access and review her account statements because of her extended travels.

29.     As alleged above, during the entire period preceding the first Unauthorized Charges in October 2017 the only charges on the **08 Account were internal CHASE

---

[5] See paragraphs 25, 27, 41, 42, 43, 46, 47, 51, 60, and 73 of , Plaintiff's original Complaint filed on June 4, 2019; paragraphs 29, 31, 36, 47, 50, 61, 62, 64, 65, 72, 74, 114, 121, 131, 132, 144, and 158 of the First Amended Complaint; and paragraphs 32, 36, 39, 41, 43, 47, 74, 78, 85, 88, 90, 127, 132, 144, 145, 157, 164, and 171 of the Second Amended Complaint.

transactions: the interest deposits by CHASE; the CHASE credit card payment; and the one direct check deposit by Plaintiff.  Plaintiff's prior **08 Account statements (prior to the start of the Unauthorized Charges) reflected only these charges and Plaintiff had no reason to suspect that starting in October 2017 there were other (unauthorized) charges on her **08 Account.

30.     Specifically, due to Plaintiff's extended travels that caused her inability to view her CHASE account statements, and because the only transactions involving her **08 Account were (as alleged in paragraphs 15, 16, 21, and 22, above) internal CHASE transactions, Plaintiff allowed those specific types of transactions (meaning only the CHASE interest deposits and the one CHASE Credit Card charge) to proceed.  That is, Plaintiff only had knowledge of the internal CHASE transactions on her **08 Account and only allowed those internal CHASE transactions to proceed (again, the interest payments from CHASE, the single payment by Plaintiff to a credit card account at CHASE, and one single check deposit by Plaintiff).  Plaintiff understood that only those charges and activities involving her **08 Account were authorized and therefore allowed only those charges, not knowing that there were Unauthorized Charges.

31.     To date, it is estimated that the total amount of Unauthorized Charges originating from the Vendors exceeded $500,000, and the amounts that have not been refunded to Plaintiff are close to $300,000.

32.     After Plaintiff returned from extended travels and was able to review her Accounts statements, Plaintiff initiated procedures with CHASE to dispute the charges to her Accounts in March 2019.  During these proceedings, Plaintiff provided CHASE with information confirming that the Unauthorized Charges were not authorized by Plaintiff.  In connection with Plaintiff's dispute proceedings with CHASE, CHASE provided summaries to Plaintiff of the currently known disputed charges by the Vendors.  CHASE's summaries show that there were Unauthorized Charges in nearly each month from November 2017 through March 2019 (including September through December 2018, and from January through March 2019).

33.   CHASE claims that it has since "refunded" to Plaintiff some of the Unauthorized Charges on the **08 Account for the period extending from the end of 2017 to about February 2018 pursuant to CHASE's "internal dispute procedures." However, CHASE refused to credit the more recent transactions from about mid-2018 through about January 2019.

34.   CHASE claims that it refunded certain amounts that it earmarked as being refunded "*in relation to transactions*" involving the Vendors Citibank, Discover, Old Navy, and Walmart.  CHASE's communications concerning these refunds indicated that it was refunding amounts of Unauthorized Charges by said Vendors that occurred well before 60 days of when Plaintiff had initiated her dispute process with CHASE in March 2019.  Plaintiff is further informed and believes that such refunds were not "refunded" by such Vendors to CHASE but, rather, were based on CHASE's own investigations confirming that such funds debited from Plaintiff's accounts were fraudulent and unauthorized.  CHASE also claims that it refunded to Plaintiff through her counsel the amount of $21,558.58 on or around March 15, 2019 without identifying the grounds or source of such funds.

35.   The Unauthorized Charges on Plaintiff's CHASE Accounts were withdrawn using different methods through the use of, among other things, Automated Clearing House (ACH) debits, Pay by Phone calls, ATM machines and credit card charges, while the exact nature of each withdrawal is currently unknown.

36.   Pursuant to Plaintiff's dispute process with CHASE, in about March 2019, CHASE wrote Plaintiff indicating that it was investigating the unauthorized transactions on her CHASE Accounts.  However, CHASE's letter(s) failed to make any mention of the fact that its Fraud Department had been contacted by Union Bank and that it had determined that there had been fraudulent activity on her account as early as November 2017 (i.e., that CHASE was on notice of the fraudulent activity); nor did CHASE's letter(s) indicate that Union Bank had refunded the $29,000.00.  CHASE's letter(s) indicated that it would not credit certain transactions on the **08 Account because

THIRD AMENDED COMPLAINT

10

Plaintiff had reported such Unauthorized Charges more than 60 days after CHASE had sent Plaintiff its account statement for the period in which the Unauthorized Charges appeared. Nevertheless, CHASE agreed to credit certain of the Unauthorized Charges on Plaintiff's **08 Account that had occurred between about November 2017 and February 2018, meaning, more than 14 months after said Unauthorized Charges were made.

37.     CHASE's refusal to credit the Unauthorized Charges on the **08 Account for the period extending from about March 2018 to January 2019 was not supported by the facts, CHASE's conduct, and were inconsistent with the rules and policies referred to by CHASE.

38.     Union Bank (through its "PurePoint Financial" division) was one of the first to have charged Plaintiff's **08 Account, first in a small amount, less than two dollars on October 31, 2017, followed by a $29,000 charge on about November 2, 2017 by a Union Bank customer.  However, Union Bank became suspicious of the $29,000 charge and contacted CHASE's Fraud Division on about November 9, 2017 and inquired whether Plaintiff had actually authorized the $29,000 charge on her **08 Account. Pursuant to Union Bank's inquiry with CHASE's Fraud Division, it was determined that Plaintiff's **08 Account had been compromised and that the $29,000 charge was fraudulent.  Therefore, in January 2018, Union Bank credited the $29,000 charge back to Plaintiff's **08 Account.

39.     Union Bank's decision to credit Plaintiff's Account in the amount of $29,000 in about January 2018 was due to Union Bank's knowledge that its preceding $29,000 charge in November 2017 (by its customer) was fraudulent and not authorized by Plaintiff.  Further, Union Bank communicated the same to CHASE's Fraud Division as early as November 2017 by, among other things, communicating to CHASE the name of its (Union Bank's) customer and confirming with CHASE that its customer had no relationship with Plaintiff, that its customer was not authorized to transact any activity on Plaintiff's **08 Account, and confirming that the transaction was fraudulent. Therefore, by about November 2017, CHASE had actual notice that Plaintiff's **08

THIRD AMENDED COMPLAINT

Account was the subject of fraudulent and suspicious account activity yet, failed to inform Plaintiff of the same, and did not take any precautions and proper steps to protect Plaintiff from further unauthorized charges. Rather, CHASE simply ignored the fact that the security of Plaintiff's **08 Account was compromised and that it had been the subject of fraudulent activity and failed to give notice of this fraudulent activity to Plaintiff.

40. Plaintiff is informed and believes that CHASE has detailed notes and logs of its communications with Union Bank putting CHASE's Fraud Division on notice of Union Bank's suspicions and the initial Unauthorized Charges (which CHASE has not produced in this action). CHASE made a deliberate decision to not act on the information it received from its communications with Union Bank, and CHASE did not disclose or warn Plaintiff about that information.

41. Plaintiff is informed and believes and thereupon alleges that where a bank's customer's account has been compromised, the proper practice followed by all banks is to immediately change the account numbers and passwords (*i.e.*, shut down the affected account and open another account with a new account number), or at least to freeze the account. Plaintiff alleges that this customary procedure is commonly and routinely used by CHASE and, in fact, CHASE's contracts with its customers (including Plaintiff) provides CHASE with the authority to freeze its customers' accounts when it suspects fraud. However, despite CHASE having received clear notice from Union Bank in November 2017 that Plaintiff's **08 Account had been compromised and was the subject of fraudulent and suspicious activity, CHASE failed to take any steps whatsoever to protect Plaintiff's **08 Account or to advise Plaintiff about the fraud.

42. Plaintiff is further informed and believes that in about January 2019, CHASE's Fraud Division flagged additional suspicious and potentially fraudulent activity on her CHASE Account(s). However, again, CHASE failed to take proper action to prevent Unauthorized Charges and did not notify Plaintiff of the same but, rather, allowed all the Unauthorized Charges to proceed.

43. According to CHASE's own website, and its managers, CHASE touted that

THIRD AMENDED COMPLAINT

12

it monitors its customer's profiles in order to detect fraud and that it uses multiple authentication checks to protect its customers' accounts. CHASE's website indicates that "We monitor your chase.com profile to help us detect fraud as early as possible."

44. However, in reality, CHASE failed to monitor Plaintiff's CHASE Accounts, nor did it check or verify the authenticity of the person(s) who originated the Unauthorized Charges. Among other things, as alleged above, the Unauthorized Charges were not routine and were not of the kind and nature that Plaintiff had normally transacted in the previous years.

45. Not one of the approximately 139 (or more) Unauthorized Charges were flagged or detected by CHASE as being unauthorized – even after CHASE had notice of the earlier unauthorized activity on Plaintiff's **08 Account by November 9, 2017, and had flagged additional fraudulent activity in January 2019. And at no time did CHASE contact Plaintiff in order to verify that she had initiated the Unauthorized Charges or authorized payment to the Vendors. Had CHASE actually implemented, or used, commercially reasonable security procedures, the Unauthorized Charges (exceeding $500,000) would not have occurred, and Plaintiff would not have lost the close to $300,000 and would have avoided the humiliation and emotional distress she was subjected to.

46. In light of the above, Plaintiff is informed and believes and thereupon alleges that CHASE:

    a. Failed to take steps to put Plaintiff on notice about the 2014 cyberattack on CHASE and to caution her about the risk and implications of the same;

    b. Failed to take steps to prevent Plaintiff's CHASE Accounts from being breached;

    c. Failed to monitor Plaintiff's CHASE Accounts for unauthorized activity;

    d. Failed to realize and take any action regarding the sudden change in the activity on Plaintiff's Accounts (*i.e.*, the Unauthorized Charges from the Vendors which started suddenly in about the end of 2017 and early 2018)

while Plaintiff's **08 Account was essentially dormant except for a very limited type of activity, and while certain of the Unauthorized Charges appeared to relate to local U.S. purchases from certain Vendors while Plaintiff was absent from the U.S.;

e. Failed to protect Plaintiff's personal private information;

f. Failed to implement commercially reasonable security protocol to ensure and/or minimize that Plaintiff's CHASE Accounts would not be the subject of unauthorized account activity;

g. Allowed the Individuals and/or third parties to withdraw funds in their own name as well as while impersonating Plaintiff and withdraw funds from the CHASE Accounts on that basis; and

h. Was on notice (constructive and actual) since about November 2017 that Plaintiff's **08 Account had been compromised and was the subject of fraudulent and suspicious activity.

47.    Additionally, CHASE was the bank of some of the Individuals who caused the Unauthorized Charges and could have easily accessed, verified and monitored the activities of those Individuals and prevented the Unauthorized Charges from occurring.

48.    After Plaintiff had filed this instant action and served the same on CHASE, CHASE abruptly, and without warning, closed all of Plaintiff's accounts on about July 11, 2019, including not only the two CHASE Accounts, but also Plaintiff's three other accounts at CHASE (which were not the subject of unauthorized account activity).  Since Plaintiff opened her accounts at Washington Mutual Bank (which were later transferred or acquired by CHASE), Plaintiff's accounts at CHASE have never been in jeopardy of having insufficient funds and have never had any issues that would justify their closure.  However, instead of closing or freezing only the two affected CHASE Accounts, or at least advising Plaintiff of its intention to close the accounts, CHASE closed all of Plaintiff's accounts without notice to Plaintiff.  Plaintiff is informed and believes and thereupon alleges that CHASE's decision to close all of Plaintiff's accounts with CHASE

was in retaliation for her instituting this instant action and/or to delay the disclosure of information that would reflect negatively on CHASE' liability.

49.     Wherefore, Plaintiff prays for relief as set forth below.

## COUNT I

**(Refund Of Unauthorized Charges (15 U.S.C. §§1693, et seq.; *Comm. Code* §§1101, et seq) – as against CHASE and DOES 1-10)**

50.     Plaintiff re-alleges and incorporates herein by this reference all prior paragraphs as though fully set forth herein.

51.     Plaintiff alleges that she is entitled to reimbursement of the Unauthorized Charges, in whole or in part, pursuant to the Electronic Funds Transfer Act, 15 U.S.C. §§1693, et seq. (the "EFTA").  The EFTA governs the transfers of electronic funds (transfers of funds other than transactions originated by a check, draft or similar paper instrument). Plaintiff is informed and believes and thereupon alleges that some or all of the Unauthorized Charges on Plaintiff's CHASE Accounts are electronic funds transfers as defined in the EFTA.

52.     Pursuant to the EFTA, the liability of a consumer, such as Plaintiff, for unauthorized electronic funds transfers is limited to the *lesser* of $50.00, or the amount of money (or value of property or services) obtained in such unauthorized electronic fund transfer prior to the time that the financial institution (*i.e.*, CHASE) is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has or may be effected.  Under the EFTA, if the consumer fails to timely report to the financial institution the unauthorized electronic funds transfer, extenuating circumstances, such as the consumer's extended travel, operates to extend the deadline to report the Unauthorized Charges to the financial institution.

53.     As alleged above, CHASE received notice (both constructive and actual notice) from Union Bank that there were Unauthorized Charges on Plaintiff's **08 Account. Specifically, on November 9, 2017, Union Bank contacted CHASE's Fraud

Division regarding Union Bank's preceding $29,000.00 charge occurring on or about November 2, 2017.  Pursuant to that inquiry, it was determined by CHASE that the $29,000 charge was fraudulent, and Plaintiff's **08 Account had been compromised. However, after having notice that Plaintiff's **08 Account had been compromised and was the subject of fraudulent transactions, CHASE failed to take any action whatsoever (such as, for example, notifying Plaintiff, and closing or freezing the **08 Account) but, rather, allowed the rest of the Unauthorized Charges to occur.

54.    12 C.F.R. §205.6(b)(5)(iii) provides that: Notice may be considered constructively given when the institution becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer to or from the consumer's account has been or will be made (i.e., in the future).

55.    Plaintiff hereby alleges that CHASE was constructively notified of the Unauthorized Charges on Plaintiff's **08 Account by November 2017 because, among other things, Union's Bank's communications with CHASE's Fraud Division made CHASE aware of circumstances leading to the reasonable belief that an unauthorized transfer from Plaintiff's **08 Account had been made and may be made in the future. Accordingly, Plaintiff alleges thereby that Plaintiff's duty or obligation, if any, under the EFTA to notify CHASE of the Unauthorized Charges was discharged in about November 2017.

56.    Furthermore, as alleged herein, Plaintiff spends a large portion of her time throughout the year traveling overseas, often with no access to her banking records.  In about March 2019, Plaintiff returned from her overseas travels and reviewed her CHASE Accounts and noticed the Unauthorized Charges.  During the relevant time periods and prior to March 2019, Plaintiff was traveling overseas with very limited or no access to her banking records and/or to the internet in order to view her CHASE Accounts' statements online.  Upon Plaintiff's review of her CHASE Accounts statements when she returned from her travels Plaintiff then notified CHASE of the Unauthorized Charges. Plaintiff alleges that due to the extenuating circumstance of her overseas travel with

limited, or no, access to her banking records, the notification period in which to report the Unauthorized Charges was reasonably extended until her return in about March 2019.

57.     Additionally, as alleged herein, CHASE did credit to Plaintiff's **08 Account Unauthorized Charges that had occurred more than 14 months after said charges were made.  To date, CHASE has not explained why it credited such charges yet, at the same time, maintains that it could not credit other Unauthorized Charges that occurred more recently.

58.     Ultimately, CHASE credited only a few of the Unauthorized Charges to Plaintiff's account, some from early 2019 for CHASE Account ending **12 and some from late 2017 and early 2018 for CHASE Account ending **08, yet, it failed to credit all of them.  The Unauthorized Charges were not authorized by Plaintiff.  Therefore, pursuant to the EFTA, CHASE is required to credit the entirety of the Unauthorized Charges to Plaintiff.

59.     Alternatively, to the extent that the Unauthorized Charges were not electronic funds transfers governed by the EFTA, California's Funds Transfers Act (*Commercial Code* §§11101, et seq.) (the "Funds Transfer Act") applies to funds transfers between and among a bank and its customer.  The Funds Transfers Act mandates that a bank reimburse its customer for funds transfers that are unauthorized.

60.     The Unauthorized Charges were not authorized by Plaintiff, nor by any agent of Plaintiff, or any person who was entrusted with duties to act for Plaintiff with respect to her banking.  Furthermore, the Unauthorized Charges were not caused by a person who obtained access to transmitting facilities of Plaintiff or who obtained from a source controlled by Plaintiff and without authority of CHASE, information facilitating a breach of the security procedures of CHASE.

61.     Plaintiff further alleges, on information and belief, that any security procedure enacted by CHASE to protect Plaintiff against unauthorized charges on her CHASE Accounts was not a commercially reasonable method of providing security against unauthorized payment orders, and that CHASE's acceptance, and payment, of the

Unauthorized Charges was not in good faith or in compliance with it security procedures or any written agreement or instruction of Plaintiff restricting acceptance of payment orders issued in the name of Plaintiff.

62.     Based on the foregoing, and pursuant to the Funds Transfer Act, CHASE is required to refund all the Unauthorized Charges to Plaintiff, including interest thereon.

63.     Wherefore, Plaintiff prays for relief as set forth below.

## COUNT II

**(Breach of Contract – as against CHASE and DOES 1-10)**

64.     Plaintiff re-alleges and incorporates herein by this reference all prior paragraphs as though fully set forth herein.

65.     Although, as alleged herein above, Plaintiff has not received documents governing her CHASE Accounts nor did Plaintiff receive any notices from Washington Mutual bank or CHASE explaining the rules and/or policies governing her CHASE Accounts, Plaintiff is informed and believes and thereupon alleges that CHASE purports that its deposit account agreements (the "Deposit Agreement" or Deposit Agreements") dated August 2017, November 2017, May 2018 and November 2018 are the operative agreements governing Plaintiff's CHASE Accounts.  A copy of said Deposit Agreements were produced by CHASE in connection with this action and are attached hereto, respectively as Exhibits 1 through 4.

66.     Pursuant to CHASE's purported Deposit Agreements, CHASE had a duty to protect Plaintiff's personal information from unauthorized access and use, and to use security measures that comply with federal law such as, for example, using computer safeguards and secured files, to authorize its employees to access Plaintiff's personal information only when needed to do their work, and requiring companies that it works with to protect Plaintiff's information.

67.     CHASE breached said Deposit Agreements by failing to protect Plaintiff's personal and account information from unauthorized access either from third parties and/or CHASE's own employee(s).  As alleged herein above, the Unauthorized Charges

THIRD AMENDED COMPLAINT
18

on Plaintiff' CHASE Accounts caused over $500,000.00 to be debited from Plaintiff's CHASE Accounts without her authorization.  Additionally, as alleged herein above, CHASE failed to take any actions or precautions in light of CHASE's knowledge, as early as November 9, 2017, that Plaintiff's **08 Account was the subject of fraudulent activity.

68.    CHASE failed to implement, or use, commercially reasonable security procedures to protect Plaintiff from unauthorized charges on her CHASE Accounts.

69.    Had CHASE implemented and used commercially reasonable security procedures to protect Plaintiff against unauthorized account activity on her CHASE Accounts (especially after CHASE gained knowledge in November 2017 that Plaintiff's **08 Account was the subject of fraudulent activity), including, but not limited to, computer safeguards, secured files, limiting and/or monitoring its employee(s) access and use of Plaintiff's personal information, and limiting access to Plaintiff's personal and account information by companies that it works with and/or monitoring the same, the Unauthorized Charges would not have occurred on Plaintiff's CHASE Accounts.

70.    As alleged herein:

    a.  The activity on Plaintiff's **08 Account was minimal at least in the nine to ten months period prior to the beginning of the Unauthorized Charges (i.e., the **08 Account was a dormant account and used exclusively for internal CHASE transactions);

    b.  The Unauthorized Charges represented a dramatic departure of the way that the **08 Account had been used in the months or years preceding the Unauthorized Charges;

    c.  Union Bank detected one of the very first Unauthorized Charges and notified CHASE's Fraud Department on or about November 9, 2017 that preceding charge of $29,000.00 was fraudulent and that Plaintiff's **08 Account had been compromised; and

    d.  In about January 2019, CHASE had flagged additional suspicious and

potentially fraudulent activity on Plaintiff's CHASE Account(s) yet, failed to take proper action to prevent Unauthorized Charges and did not notify Plaintiff of the same.

71.    Despite the foregoing, CHASE failed to detect even one of the 139 (or more) Unauthorized Charges on Plaintiff's CHASE Accounts, and despite the fact that CHASE represented that it protects Plaintiff's CHASE Accounts to detect fraud and uses security measures to protect Plaintiff's personal information.  Nor did CHASE take any actions whatsoever to protect Plaintiff from further Unauthorized Charges.

72.    As a proximate result of CHASE's breach of the Deposit Agreement, Plaintiff has been harmed, namely, Plaintiff's CHASE Accounts were debited in amount over $500,000.00 without Plaintiff's authorization or consent.

73.    Wherefore, Plaintiff prays for relief as set forth below.

## COUNT III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing – as against CHASE and DOES 1-10)

74.    Plaintiff re-alleges and incorporates herein by this reference all prior paragraphs as though fully set forth herein.

75.    Plaintiff is informed and believes and thereupon alleges that she entered into a contract with CHASE, or with CHASE's predecessor Washington Mutual bank, for the depositing and opening of Plaintiff's CHASE Accounts.  Although Plaintiff is not in possession of such contract and has requested the same from CHASE, Plaintiff is informed and believes and thereupon alleges that CHASE purports that the Deposit Agreements are the operative agreements between Plaintiff and CHASE relating to Plaintiff's CHASE Accounts.

76.    Plaintiff did all or substantially all of the significant things that said contract required her to do, and all conditions required for CHASE's performance of said contract had occurred or were excused.

77.    CHASE's Deposit Agreements provide that it may decline or prevent

THIRD AMENDED COMPLAINT

20

transactions on its customers' accounts because, among other things: "We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s)"; "We suspect that any transaction…may be fraudulent[.]" The Deposit Agreement also states that it may decline or prevent such transactions in order to protect its customers.

78.     CHASE's Deposit Agreements further provide that CHASE uses security measures to protect its customers' personal information from "unauthorized access and use."

79.     CHASE's Deposit Agreements further provide that "Any provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care."

80.     CHASE unfairly interfered with Plaintiff's right to receive the benefits of the Deposit Agreement by failing to take any action, including informing Plaintiff, that there had been fraudulent activity on her **08 Account as early as November 2017, or inquiring with Plaintiff and/or the Vendors regarding the Unauthorized Charges which represented a major change in the way Plaintiff's **08 Account (a mostly dormant account for several months) was being used.

81.     As alleged herein above, Union Bank advised CHASE as early as November 2017 that Plaintiff's **08 Account was the subject of fraudulent activity and Union Bank refunded the fraudulent $29,000 charge on Plaintiff's **08 Account in about January 2018.  CHASE was on notice since at least November 2017 that Plaintiff's **08 Account was compromised and was the subject of unauthorized account activity.  CHASE additionally flagged additional suspicious and potentially fraudulent activity on her CHASE Account(s) in about January 2019.  Yet, CHASE failed to inform Plaintiff of these matters and failed to take proper measures to stop further Unauthorized Charges, and thereby unfairly interfered with Plaintiff's right to receive the benefits of the Deposit Agreement.

82.     Had CHASE notified Plaintiff of the fraudulent activity on her **08

THIRD AMENDED COMPLAINT

Account in November 2017 and/or taken steps to prevent further fraudulent activity such as, for example, freezing and/or closing Plaintiff's **08 Account and opening a new account, the Unauthorized Charges would not have occurred.

83. Further, as alleged herein above, CHASE unfairly interfered with Plaintiff's right to receive the benefits of the Deposit Agreement by failing to keep Plaintiff advised of known suspicious or fraudulent activity on her account.

84. As alleged herein above, in about March 2019, Plaintiff initiated procedures with CHASE to dispute the Unauthorized Charges on her Account. CHASE, having refused to credit or refund all the Unauthorized Charges, Plaintiff filed this action on June 4, 2019.

85. Furthermore, on or about July 11, 2019, CHASE abruptly, and without notice, closed all of Plaintiff's five accounts at CHASE, including the two CHASE Accounts. Although CHASE sent Plaintiff a letter by mail dated July 11, 2019 indicating that it was closing all of Plaintiff's accounts, Plaintiff did not receive such letter until several days later. Rather, Plaintiff leaned about CHASE having closed her accounts on July 11, 2019 when Plaintiff attempted to use her CHASE credit card yet, it was declined. Plaintiff then immediately called CHASE and was informed that it had closed her accounts. However, during Plaintiff's phone call with CHASE, CHASE did not inform Plaintiff of the reason why it has closed her accounts. To date, CHASE has never provided any explanation for its closing of Plaintiff's accounts.

86. Due to CHASE's abrupt closing of all of Plaintiff's accounts including her credit card accounts, while Plaintiff was visiting the U.S., Plaintiff had no means of paying for her expenses, and had to scramble to obtain funds to pay for her purchases. Plaintiff was forced to reach out to friends and family members to borrow funds for the same, which caused Plaintiff humiliation and emotional distress.

87. CHASE could have easily closed and/or frozen only Plaintiff's two CHASE Accounts and opened new accounts for her. Yet, CHASE decided to close all of Plaintiff's several accounts and cancel Plaintiff's credit cards, without prior notice to

THIRD AMENDED COMPLAINT

22

Plaintiff.

88. There was no fraudulent or irregular account activity on any of Plaintiff's CHASE accounts other than the **08 Account and the **12 Account and, therefore, there was no reason to close such other accounts (especially without at least some prior notice to Plaintiff).

89. CHASE's decision to close all of Plaintiff's accounts was due to retaliate against Plaintiff's having asserted her rights, initiated a dispute process with CHASE to contest the Unauthorized Charges, having filed this instant action, and/or to delay the disclosure of information that would reflect negatively on CHASE' liability, but not due to any legitimate commercial or business reason.

90. CHASE's abrupt closing of Plaintiff's accounts, including the CHASE Accounts, unfairly interfered with Plaintiff's right to receive the benefits of her contract with CHASE.

91. Wherefore, Plaintiff prays for relief as set forth below.

### **COUNT IV**

**(Negligence – as against CHASE and DOES 1-10)**

92. Plaintiff re-alleges and incorporates herein by this reference all prior paragraphs as though fully set forth herein.

93. CHASE, as Plaintiff's bank, had a duty to exercise due care to not expose Plaintiff to an unreasonable risk of injury. CHASE breached its duty to Plaintiff by failing to take appropriate precautions to prevent fraudulent and unauthorized charges to be debited from Plaintiff's CHASE Accounts. Specifically, CHASE, as Plaintiff's bank, had a duty to protect Plaintiff from unreasonable risks of fraudulent activity on her Accounts. CHASE breached such duty by failing take reasonable steps to protect Plaintiff from fraudulent activity on her CHASE Accounts and, as a result, Plaintiff's CHASE Accounts were fraudulently debited by the Vendors in the total amount known to date to be in excess of five hundred thousand dollars, of which about $300,000 has not been refunded to Plaintiff.

94.     As alleged herein above, Union Bank contacted CHASE's Fraud Division in November 2017 and determined, with the help of CHASE, that Union Bank's preceding $29,000 charge was fraudulent.   Union Bank gave CHASE actual notice in November 2017 that Plaintiff's **08 Account had been compromised and was the subject of fraudulent and suspicious account activity.

95.     Furthermore, Plaintiff is informed and believes that in about January 2019, CHASE's Fraud Division flagged additional suspicious and potentially fraudulent activity on her CHASE Account(s).

96.     However, despite CHASE being on notice that Plaintiff's **08 Account had been the subject of fraud (the November 2, 2017 $29,000 Unauthorized Charge), and having knowledge of additional activity that it considered suspicious (CHASE's Fraud Division's January 2019 internal communications), CHASE failed to take any proper action to prevent Unauthorized Charges, nor did it notify Plaintiff of the same.  Instead, CHASE simply sat back and allowed the Unauthorized Charges to proceed.

97.     According to CHASE's website, CHASE touted that it monitors its customer's profiles in order to detect fraud and that it uses multiple authentication checks to protect its customers' accounts.  Plaintiff is informed and believes and thereupon alleges that CHASE failed to monitor Plaintiff's CHASE Accounts, nor did it check or verify the authenticity of the person(s) who originated the Unauthorized Charges. Among other things, the Unauthorized Charges were not routine and were not of the kind and nature that Plaintiff had normally transacted in the years prior to the Unauthorized Charges.  As alleged herein above, prior to the Unauthorized Charges, Plaintiff's **08 Account was used for only three kinds of transactions all being internal CHASE transactions: (i) interest payments by CHASE; (ii) an occasional deposit by Plaintiff; and (iii) once in a while payments by Plaintiff on another of Plaintiff's CHASE accounts. Otherwise, Plaintiff's Account was essentially dormant.

98.     As Plaintiff's banking institution, CHASE had a duty to exercise due care to not expose Plaintiff to an unreasonable risk of injury.  Plaintiff hereby alleges that

CHASE, having notice of fraudulent and suspicious account activity on Plaintiff's CHASE Account(s), had a duty to make reasonable inquiries and take reasonable steps to protect Plaintiff from fraudulent, suspicious and Unauthorized Charges on her CHAE Accounts.

99.     CHASE breached its duty to Plaintiff by failing to take any action whatsoever to protect Plaintiff from fraudulent and Unauthorized Charges despite it having notice of sufficiently suspicious circumstances that should have alerted CHASE to the risk of the same.   Ultimately, the bulk of the Unauthorized Charges occurred after January 2018, which could have been prevented had CHASE acted on its knowledge and information that Plaintiff's **08 Account was the subject of fraudulent account activity.

100.    Furthermore, despite CHASE's representations that it would protect Plaintiff's CHASE Accounts from unauthorized activity and that it would monitor her Accounts, Plaintiff is informed and believes and thereupon alleges that CHASE failed to monitor her account for fraud, and that not one of the approximately 139 (or more) Unauthorized Charges were flagged or caught by CHASE as being unauthorized. Furthermore, at no time did CHASE contact Plaintiff in order to verify that she had initiated the Unauthorized Charges.   Had CHASE actually implemented, or used, commercially reasonable security procedures (per its own representations), the Unauthorized Charges would not have occurred.

101.    As a proximate and foreseeable result of CHASE's breach of its duties to Plaintiff, Plaintiff has been harmed. As alleged herein, over five hundred thousand dollars was debited from Plaintiff's CHASE Accounts, while none of said transactions were authorized by Plaintiff.   Had CHASE actually acted on its knowledge (in November 2017) that Plaintiff's **08 Account had been the subject of fraudulent activity, and protected Plaintiff from further unauthorized charges by, for example, freezing or closing of Plaintiff's **08 Account, none of, or at least the vast majority of the Unauthorized Charges would not have occurred on Plaintiff's CHASE Accounts.

102.    Due to CHASE's negligence, Plaintiff has experienced severe humiliation

and emotional distress including, but not limited to, loss of sleep, severe anxiety, stress, and embarrassment.  Plaintiff's symptoms arose when she first discovered in or about March 2019 that she had been the victim of identity theft and that CHASE had allowed more than $500,000 to be debited from her CHASE Accounts without her authorization. Furthermore, due to Plaintiff's financial situation, she experienced additional and extreme emotional distress because she was very concerned that all her funds in all of her other banking institutions may be subjected to the same unauthorized transactions as CHASE had allowed. The fact that the unauthorized charges were on the **08 Account, which was a dormant account, used by Plaintiff only with CHASE, caused Plaintiff additional anxiety, stress, loss of sleep and emotional distress since she could not understand who could have accessed that account other than herself and CHASE. Plaintiff also discovered that as soon as the fraudulent transactions stopped on the **08 Account in or about January 2019, the same unauthorized transactions resumed on her **12 Account starting about the second half of January 2019, which meant that the defendants behind the Unauthorized Charges most probably had information about all of Plaintiff's accounts and, therefore, Plaintiff was emotionally distressed and anxious about the security of her other accounts, which in turn caused her additional anxiety, stress and humiliation.  Additionally, Plaintiff experienced further emotional distress when CHASE abruptly and without warning closed all of Plaintiff's accounts at CHASE, which caused Plaintiff to experience anxiety and worry that the remainder of her funds at CHASE had been debited by unauthorized means, and which caused Plaintiff to be humiliated.

103.   Wherefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants and each of them as follows:

On the First Count for Refund of Unauthorized Charges:

1. For refund and reimbursement by CHASE of all Unauthorized Charges on Plaintiff's Account and interest thereon;

THIRD AMENDED COMPLAINT

26

2. For prejudgment interest;

3. For reasonable attorneys' fees;

4. For costs of suit herein incurred; and

5. For such other and further relief as the Court may deem proper.

On the Second Count for Breach of Contract:

1. For general, compensatory, incidental, consequential and special damages in the amount according to proof, but in excess of the jurisdiction of this Court;

2. For prejudgment interest;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper.

On the Third Count for Breach of the Covenant of Good Faith and Fair Dealing:

1. For general, compensatory, incidental, consequential and special damages in the amount according to proof, but in excess of the jurisdiction of this Court;

2. For prejudgment interest;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper.

On the Fourth Count for Negligence:

1. For general, compensatory, incidental, consequential and special damages, including damages for Plaintiff's emotional suffering, in the amount according to proof, but in excess of the jurisdiction of this Court;

2. For injunctive and other equitable relief as appropriate, including temporary, preliminary and/or permanent injunction(s);

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper.

/ / /

/ / /

/ / /

Dated: April 27, 2020                    ASTOURIAN & ASSOCIATES, INC.


                                         By:    _/s/ Paro Astourian_____
                                                Paro Astourian, Esq.
                                                Attorneys for Plaintiff,
                                                Margaretha Natalia Widjaja